```
                   UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE
```

Jonathan Sokorelis,
     Petitioner

     v.                                Civil No. 07-cv-335-SM
                                       Opinion No. 2009 DNH 049
Bruce W. Cattell, Warden,
New Hampshire State Prison,
     Respondent


**O R D E R**

Jonathan Sokorelis, a state prisoner, seeks habeas corpus relief.  See 28 U.S.C. § 2254.  Respondent, asserting that Sokorelis is not entitled to relief, moves for summary judgment. Sokorelis objects.  For the reasons given, respondent's motion for summary judgment is granted.


**Background**

In November of 1994, Sokorelis was tried on one count of first-degree murder and two counts of attempted murder in the New Hampshire Superior Court.  On the third day of jury deliberations, petitioner decided to plead guilty to one count of second-degree murder and two counts of attempted murder, thereby eliminating the possibility of a guilty verdict on the first-degree murder charge, and its concomitant mandatory sentence to life imprisonment without the possibility of parole.  There was no plea agreement, beyond the state's willingness to accept the

pleas in exchange for dropping the first-degree murder charge then under deliberation. After Sokorelis pled guilty to the three separate charges (involving separate victims), the following exchange with the court occurred:

| | |
|---|---|
| The Court: | Do you have any questions at all, sir? |
| The Defendant: | No. |
| The Court: | Counsel, do you have something? |
| Ms. Rundles:<br>(Prosecutor) | Yes, your Honor. Um, although this was a naked plea, there was one understanding between counsel. The defendant would agree to waive his right to petition for sentence suspension for a ten-year period, which — a right under [RSA] 651-20. |
| Mr. Jeffco:<br>(Defense Counsel) | That is-that is correct, your Honor. As pointed out, it is part of negotiations to get us to that point, sir. And it was and is a waiver of his right to, uh, petition the superior court for sentence reduction pursuant to RSA 651:20 for a ten-year period. |
| The Court: | Mr. Sokorelis, I'll ask you individually: RSA 61:20, one of the statutes — 651:20, one of the statutes of the state of New Hampshire, allows an individual sentenced to state prison to petition the court once every four years, but not sooner, uh, for a review of the sentence. Usually, the sentencing judge or some other judge, if that sentencing judge is not available — uh, and that is a statutory right which you have. My understanding is as a part of the — that the only agreement, apparently, between you and the state is you're waiving, uh, your rights under that statute for a period of ten years? |

```
The Defendant:     Yes, sir, I am.

The Court:         All right.

Ms. Rundles:       And, your Honor, just for the record, I
                   want to make clear that the waiver was
                   in exchange for the nol pros of the
                   first-degree indictment.  There was no
                   other rec – agree [sic] to recommend
                   anything.

The Court:         I understand.
```

Approximately one month after he entered his guilty pleas, Sokorelis was sentenced to forty years to life on the second-degree murder charge and ten to twenty years on each of the two attempted murder charges, consecutive to each other and to the murder sentence.  Sokorelis is currently incarcerated in the New Hampshire State Prison.  His sentencing document states, among other things: "Defendant has waived his rights under RSA 651:20 for a period of 10 years."  RSA 651:20 provides:

> "Notwithstanding any other provision of law . . . the sentence to imprisonment of any person may be suspended by the sentencing court at the time of imposition of the sentence or at any time thereafter in response to a petition to suspend sentence which is timely brought. . . ."

Thus, the only right Sokorelis waived was his state statutory right to petition the sentencing court for a suspension of his sentence within ten years.  In other words, he plainly did not waive his right to collaterally attack his conviction on

constitutional grounds in either the state or federal courts, or to seek any other post-sentencing relief.

After trial, Sokorelis actually did seek sentence relief, from the state's sentence review division. The record does not include Sokorelis' petition to the review division, so the arguments he raised are unknown. But, on September 1, 1995, after considering the matter, the review division affirmed petitioner's sentence for second-degree murder, and increased the two consecutive attempted-murder sentences to fifteen to thirty years each.

On July 30, 2004, a few months before the ten-year waiver period expired, Sokorelis filed a pro se motion in state court for leave to withdraw his guilty pleas. He subsequently retained counsel, who refiled the motion in late October. Petitioner argued that his guilty pleas were improvidently entered, in that they had not been knowing, intelligent or voluntary. That motion was denied on May 24, 2005, after hearing. Petitioner appealed to the New Hampshire Supreme Court, which affirmed the trial court's decision.

On October 15, 2007, Sokorelis filed the pending federal petition for a writ of habeas corpus. He again contends that his

guilty pleas were not knowing, intelligent, or voluntary, primarily because he was unaware of the consequences of those pleas with regard to sentencing.  Specifically, Sokorelis argues he was not aware that his guilty pleas exposed him to the imposition of consecutive sentences, and that the only reason he agreed to plead guilty was that he understood he would receive only one sentence rather than three.

The magistrate judge initially recommended that the petition be dismissed as untimely, but reconsidered, leaving the issue of timeliness for future resolution.  Respondent now moves for summary judgment, arguing that Sokorelis' petition is time-barred.  Alternatively, if the petition is deemed timely, respondent says petitioner is not entitled to habeas relief on the merits, because his pleas were provident when entered, and were fully consistent with federal constitutional requirements.

## Discussion

It is undisputed that Sokorelis filed his petition well beyond the time limit established by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Sokorelis asserts, however, that the AEDPA limitations period should be equitably tolled due to exceptional circumstances.  He argues that he diligently pursued the relief he now seeks by moving in state

court to withdraw his guilty pleas, albeit ten years after judgment was entered.  He contends that he could not so earlier due to an exceptional circumstance, i.e., his own belief that the waiver of rights under RSA 651:20 to which he agreed included a bar to challenging the constitutionality of his guilty pleas during the same ten-year period.  Petitioner's argument is not persuasive.

Under AEDPA, a one-year period of limitation applies to applications for writs of habeas corpus, and it runs from the date of final judgment.  See 28 U.S.C. § 2244(d)(1).  The court of appeals for this circuit has held that "defendants like [petitioner], convicted prior to AEDPA, can file their petitions within one year of AEDPA's effective date."  David v. Hall, 318 F.3d 343, 344 (1st Cir. 2003) (citations omitted).  AEDPA was effective as of April 24, 1996.  Consequently, petitioner had until April 24, 1997, to file a federal habeas corpus petition. See Cordle v. Guarino, 428 F.3d 46, 48 (1st Cir. 2005).  That deadline was missed by more than ten years.  Thus, petitioner can avoid dismissal of his petition only if the limitations period is equitably tolled.

The United States Supreme Court has "never squarely addressed the question [of] whether equitable tolling is

applicable to AEDPA's statute of limitations." Pace v. DiGuglielmo, 544 U.S. 409, 418 (2005) (citing Pliler v. Ford, 542 U.S. 225 (2004)). The court of appeals for this circuit has, however, "allowed for equitable tolling of the § 2244(d)(1) limitations period in rare and extraordinary cases." Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir. 2007); see also Neverson v. Farquharson, 366 F.3d 32, 41 (1st Cir. 2004) ("the one-year limitations period in § 2244(d)(1) is not jurisdictional and, accordingly, can be subject to equitable tolling in appropriate cases"). Such extraordinary relief is available, however, only in the most compelling of circumstances. As the David court observed:

> If equitable tolling is available to extend section 2244(d)'s limitations period, it can only do so for the most exceptional reasons. One of AEDPA's main purposes was to compel habeas petitions to be filed promptly after conviction and direct review, to limit their number, and to permit delayed or second petitions only in fairly narrow and explicitly defined circumstances. . . . To bypass these restrictions for reasons other than those given in the statute could be defended, if at all, only for the most exigent reasons.

David, 318 F.3d at 346 (citations omitted); see also Donovan v. Maine, 276 F.3d 87, 93 (1st Cir. 2002) ("We have made it pellucid that equitable tolling, if available at all, is the exception rather than the rule; and that resort to its prophylaxis is deemed justified only in extraordinary circumstances") (citations and internal punctuation omitted); Delaney v. Matesanz, 264 F.3d

7, 15 (1st Cir. 2001) ("In short, equitable tolling is strong medicine, not profligately to be dispensed.").

A petitioner who seeks equitable tolling must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418 (citation omitted).  The court of appeals expanded on that standard by delineating six factors "that may influence a court's decision whether or not to grant equitable tolling in a habeas case."  Trapp, 479 F.3d at 61.  Those factors include:

> 1.  The petitioner's own diligence in pursuing habeas relief;
>
> 2.  Whether some extraordinary circumstance prevented the petitioner from making a timely filing;
>
> 3.  The petitioner's diligence in the pursuit of other post-conviction remedies and the process already afforded in the state system;
>
> 4.  Any prejudice to the prosecution that would result from tolling and possible retrial;
>
> 5.  The fact that equitable tolling is not available in cases of dubious merit;
>
> 6.  Whether or not the case is a capital case and whether or not the petitioner has been sentenced to death.

Id. (citations omitted).

### 1. Diligence in pursuing habeas relief

Petitioner argues that the record demonstrates his diligence because: (1) he believed (albeit mistakenly) that he had waived his right to challenge the validity of his guilty pleas for ten years from the day he entered them; and (2) just as soon as the ten-year waiver period was over, he filed his motion to withdraw his pleas, exhausted available state remedies, and then filed his federal petition.  Actually, petitioner's motion to withdraw his pleas was not filed "[e]xactly ten years after entry of his pleas of guilty," as he argues, but, rather, some nine years and eight months later.  It is a minor point of little consequence, but had petitioner truly been waiting for the waiver period to expire, one would expect him to file his motion to withdraw his pleas promptly after the ten-year period expired, not before.  In any event, petitioner has failed to show that he was diligent in pursuing habeas relief.  A ten-year delay is facially inconsistent with diligence, though it might be explained by extraordinary circumstances.

### 2. Extraordinary circumstances

Petitioner argues that extraordinary circumstance did indeed preclude his filing a timely federal habeas petition.  That circumstance was his mistaken belief that he had waived, for ten years, his right to challenge the constitutionality of his pleas.

9

As a general matter, it is well established in this legal context that "extraordinary circumstances" are "circumstances beyond the litigant's control [that] have precluded [him] from promptly filing." Cordle, 428 F.3d at 481 (quoting Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir. 2002))(emphasis added). The court of appeals for this circuit has ruled that a petitioner's ignorance or carelessness does not excuse an untimely habeas petition. See Cordle, 428 F.3d at 49 (ruling that petitioner's lack of knowledge of the law and filing deadlines in addition to her attorney's error did not constitute an extraordinary circumstance). In Lattimore, the fact that the petitioner was pro se and had a "limited knowledge of the law" was held not to be a special circumstance that warranted equitable tolling. Lattimore, 311 F.3d at 55. In Voravongsa v. Wall, the petitioner's pro se status was not grounds for equitable tolling. Voravongsa, 349 F.3d 1, 8 (1st Cir. 2003); see also Donovan, 276 F.3d at 93 (ruling that "while pro se pleadings are to be liberally construed, the policy of liberal construction cannot plausibly justify a party's failure to file a habeas petition on time") (internal citations omitted); Delaney, 264 F.3d at 15 (ruling that "in the context of habeas claims, courts have been loath to excuse late filings simply because a pro se prisoner misreads the law"). In Neverson the petitioner filed a timely habeas petition, but it was dismissed because it included

unexhausted claims.  Petitioner's later argument, that the court's decision to dismiss rather than stay his case, as well as the court's failure to advise him of his options and the law, constituted extraordinary circumstances excusing the untimely filing of a second petition, was rejected.  Neverson, 366 F.3d at 43.[1]

In addition to rejecting the application of equitable tolling, in the cases cited above, the court of appeals has also identified, in opinions from other circuits, circumstances it would likely consider sufficiently extraordinary to warrant application of the doctrine.  See Trapp, 479 F.3d at 60.  For example, the Second Circuit found equitable tolling appropriate when an attorney, specifically hired to file a habeas petition, failed to file it.  See Baldayaque v. United States, 338 F.3d 145, 152-53 (2d Cir. 2003).  The Ninth Circuit found equitable tolling appropriate when, after the petitioner discharged his attorney, the attorney refused to return the petitioner's file, causing him to miss the filing deadline.  See Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir. 2003).  Equitable tolling was also

---

[1] In addition, "garden-variety attorney negligence" does not excuse a petitioner's untimely habeas filing.  Trapp, 479 F.3d at 60 (internal quotations omitted).  For example, an attorney's miscalculation of AEDPA's limitations period is nothing more than "routine error" and "does not constitute extraordinary circumstances warranting equitable tolling."  Id. (citing David, 318 F.3d at 346).

11

found appropriate when an attorney told a petitioner that a habeas petition had been filed, but in fact it had not.  See United States v. Martin, 408 F.3d 1089, 1093-05 (8th Cir. 2005); see also United States v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002).  The facts presented here do not establish like circumstances, and do not warrant application of equitable tolling principles.

    The "extraordinary circumstance" petitioner says caused him to miss the AEDPA filing deadline amounts to little more than a "garden variety claim of excusable neglect" (and not a particularly plausible one).  David, 318 F.3d at 346. Petitioner's waiver of his state statutory right to seek a suspended sentence under RSA 651:20 for ten years simply cannot be reasonably understood as waiving all collateral challenges to his conviction and sentence for ten years, including federal habeas corpus relief.  Such a belief, if petitioner actually thought that was the case, would be unreasonable, and at best negligent.  Petitioner has failed, by a wide margin, to identify any circumstances warranting application of equitable tolling in this case.  See Delaney, 264 F.3d at 15 (citing with approval the trial court's finding that extraordinary circumstances did not exist when "no one lulled the petitioner into a false belief that

he had more than the allotted time to file, or otherwise misled him").

### 3. Diligence in pursuing other post-conviction remedies

Petitioner did obtain sentence review in 1995. However, based on the record, he appears not to have pursued any other post-conviction remedies until his state motion to withdraw his pleas was filed in 2004. Consequently, petitioner has shown, at best, only modest diligence in pursuit of other post-conviction remedies.

### 4. Prejudice to the prosecution

The events that led to petitioner's conviction occurred on January 14, 1994. His petition for habeas relief was filed some thirteen years later. That passage of time would likely impose significant burdens on the State should it have to retry Sokorelis. See Trapp, 479 F.3d at 62 (finding events occurring twenty-four years prior to filing a habeas petition prejudicial to the state); see also David, (discussing the strong interest in prompt assertion of habeas petitions due to the difficulty in retrying petitioner "as memories fade, evidence disperses and witnesses disappear"). Accordingly, this factor also militates against equitable tolling.

**5.   Strength of petitioner's claim**

Equitable tolling is also not appropriate because petitioner's claim is of dubious merit.  See Lattimore, 311 F.3d at 55 (determining equitable tolling to be unavailable for a claim of dubious merit); see also Brackett v. United States, 270 F.3d 60, 71 (1st Cir. 2001).

Petitioner says his guilty pleas were not entered in a manner consistent with minimum federal constitutional standards — they were not knowingly, intelligently and voluntarily entered. See Boykin v. Alabama, 395 U.S. 238, 242 (1969); Desrosier v. Bissonnette, 502 F.3d 38, 41 (1st Cir. 2007).  Courts consider the totality of the circumstances when determining whether a guilty plea was knowing, intelligent and voluntary.  United States v. Ward, 518 F.3d 75, 84 (1st Cir. 2008).  To meet federal constitutional standards, the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.  Id.  No particular form or script need be followed, but the record must show that the defendant's plea was intelligent and voluntary, and, in that respect, the plea colloquy "might be supplemented by the completion of a printed waiver form that also addressed the constitutional elements of a plea."  Ward, 518 F.3d at 83.

Petitioner seeks to undermine his pleas on grounds that he did not understand that he could be sentenced to three consecutive terms of imprisonment, and that his attorney never informed him of that possibility.  Further, he argues that at the age of nineteen, he did not understand the meaning of "consecutive sentences," so did not appreciate the consequences of his pleas.  He also says he was prejudiced because he never would have agreed to plead guilty had he known that consecutive sentences would mean, as a practical matter, imprisonment for life.  Petitioner also argues that he was rushed through the plea discussions.

During the plea colloquy, the state judge advised petitioner of the specific rights he would waive by pleading guilty.  The court also asked whether petitioner understood that he was offering a "naked plea" (explained as one that involved no promises by the state concerning sentencing recommendations).[2]

---

[2] The transcript of the plea colloquy includes the following relevant exchange:

> The Court:   You understand, uh, do you — as I do, apparently — uh, based on the — your attorney's representations to me, that you are entering what we call a naked plea, and that is, a plea that is not based on any recommendations with the state and no, uh, promises, uh, concerning recommendations have been made; do you understand that?
>
> The Defendant: Yes, sir.

The court also asked whether anyone had promised petitioner anything to induce him to plead guilty that day.  He denied any inducement to plead guilty.

Petitioner confirmed that he thoroughly reviewed the matter with his attorney and had no further questions for the court or his attorney.  Petitioner also signed a Waiver of Indictment form and an Acknowledgment and Waiver of Rights form on which he acknowledged that he understood the nature of the charges to which he was pleading guilty, had discussed the matter with counsel, and pertinently, that he could be sentenced to "any term up to life."  It also appears that petitioner's defense counsel testified, during the state hearing on his motion to withdraw the pleas, that he told petitioner that consecutive sentences were possible, and that petitioner understood the possible sentencing consequences of his pleas in that respect.

Finally, the "rush," as noted by the state court, was real but unavoidable, given that it was petitioner who decided to enter guilty pleas during trial.  He had an interest in avoiding what might have been an imminent verdict of guilty on the first degree murder charge, and the life sentence with no possibility of parole that would necessarily follow.  The deal he struck, such as it was, held out only a remote possibility of release

some day in the future, but a chance, however unlikely, was a better option than no chance. Petitioner cannot now be heard to claim that he was "rushed" to the point of not understanding what he was doing.

Given the facts, as presented by petitioner and as appear in the record, his claim that his guilty pleas were not knowingly, intelligently, and voluntarily entered, or that the record does not affirmatively show that his guilty pleas were entered in a manner consistent with federal constitutional standards, is highly dubious. This factor also weighs heavily against application of the equitable tolling doctrine.

### 6. Possibility of a death sentence

This is not a case involving capital punishment, so obviously, this factor does not support petitioner's argument for application of equitable tolling.

Evaluation of the petition and record in light of the six Trapp factors leads the court to conclude that the statute of limitations governing petitioner's federal habeas petition should not be equitably tolled.

**Conclusion**

Because petitioner did not bring his petition within the limitations period imposed by AEDPA, did not pursue habeas relief diligently, has not identified extraordinary circumstances that prevented him from filing his petition in a timely fashion, seeks to raise claims of dubious merit, the petition is untimely, and petitioner is not entitled to have the filing period equitably tolled. See Delaney, 264 F.3d at 16 (ending court's analysis after a finding that the petitioner's untimely habeas action would not be saved by equitably tolling). Accordingly, respondent's motion for summary judgment (document no. 10) is granted. The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

April 3, 2009

cc: Stephen D. Fuller, Esq.
Susan P. McGinnis, Esq.
Jay Rancourt, Esq.
John Vinson, NHDOC